UNITED STATES, Appellee

v

STEPHEN D. CRIDER, Lance Corporal,
U. S. Marine Corps, Appellant

21 USCMA 193, 44 CMR 247

No. 24,255

February 18, 1972

*John A. Kendrick, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Philip H. Manning, Esquire,* and *Lieutenant David G. Grimes, Jr.,* JAGC, USNR.

*Captain John P. Proctor,* USCMR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

DUNCAN, Judge:

We granted review in this case to consider the contention of appellate defense counsel that the members of Panel #2, United States Navy Court of Military Review, should have disqualified themselves from consideration of the appellant's case on the ground of personal bias and prejudice.

A short review of the facts of the case is necessary in order to place the granted issue in proper perspective.

Evidence at trial showed that on March 1, 1969, a nine-member squad of Marines, with the accused a member and led by Corporal Reese, set up an ambush on a trail near a Vietnamese village suspected of harboring Viet Cong. Four prisoners were taken (three girls and a boy) after they discovered the Marines' position and began shouting. The prisoners were bound and gagged while squad members made a sweep of the village. Upon return to the ambush site, Reese and the accused took the victims to a place nearby. Several squad members testified that they heard screams, and several testified to having observed the prisoners being assaulted. Under a grant of immunity, Private Snow, a member of the squad, stated that Reese summoned him to a bunker on the trail and directed Snow to get a grenade. When Snow returned with the grenade, Reese and the accused were dismantling the bunker. Snow

194

looked into the bunker and saw the bodies of three girls and a boy, apparently dead. Snow, at Reese's direction, threw the grenade into the bunker and the resulting explosion damaged it to the extent that the three Marines were able to tear down the remainder of the bunker.

While none of the witnesses actually observed the accused or Reese kill the victims, one witness testified that Crider had admitted to him that he killed the boy and the oldest girl. There was no evidence elicited to identify the bodies of the victims and there was no direct testimony as to the cause of death.

Upon initial consideration, Panel #2 of the United States Navy Court of Military Review, on August 17, 1970, returned the case for a new post-trial review by a staff judge advocate of another command[1] because the original review was not conducted pursuant to Article 61, Uniform Code of Military Justice, 10 USC § 861, and paragraph 85a, Manual for Courts-Martial, United States, 1969 (Revised edition).

The record of trial was again received by Panel #2 on November 9, 1970; thereafter, briefs assigning error were filed. On the date set for oral argument, February 11, 1971, appellate defense counsel filed a written motion requesting that the judges of Panel #2 disqualify themselves on the ground that they could not give a fair and impartial hearing to the appellant since just two weeks previously they had adversely decided the companion case of United States v Reese, No. 70–0855 (NCMR January 27, 1971), petition denied, 20 USCMA 671 (1971). The court denied the motion from the bench, whereupon counsel declined to argue the merits of appellant's assignments of error on the ground that argument might prejudice the appellant's right to obtain a writ of prohibition from a superior court ordering Panel #2 not to review the case.[2]

After denying appellate defense counsel's motion, Panel #2 went on to conclude:

"We have assessed appellant's alleged errors relating to the sufficiency of evidence and have found them to be without merit. Our reading of the record of trial convinces us beyond reasonable doubt that the government established its view of the case, that is, that the *appellant and Corporal Reese conspired together to murder four unidentified Vietnamese captives and did in fact murder them* aided and abetted by Private First Class Snow, who had been granted immunity and who testified for the prosecution.

"We have examined the other alleged errors and the government's replies thereto and have concluded that the court had jurisdiction of the appellant and the offenses; that no error materially prejudicial to his substantial rights was committed; and that the findings and sentence, as hereinafter modified,

---

[1] The court-martial was convened by Major General Simpson. His staff judge advocate, Colonel Lucy, prepared the post-trial review in which he advised that Major General Simpson was disqualified to review the record since he had granted immunity to a prosecution witness. Accordingly, the record of trial and Colonel Lucy's review were forwarded to Lieutenant General Nickerson, the next superior in the chain of command. The latter approved the findings and sentence on the basis of Colonel Lucy's review. Lieutenant General Nickerson's action was held to be a legal nullity since, in the opinion of the Court of Military Review, Article 61, Uniform Code of Military Justice, 10 USC § 861, and paragraph 85a, Manual for Courts-Martial, United States, 1969 (Revised edition), required him to refer the record of trial to *his staff judge advocate.* He could not legally take action on the basis of a review by the staff judge advocate of another command.

[2] Appellant's petition to this Court for a writ of prohibition and injunctive relief, to which was attached a copy of the decision of Panel #2 in the *Reese* case, was denied without prejudice to assign the issue raised in a petition for grant of review on March 4, 1971.

are correct in law and in fact." [Emphasis supplied.]

The basis for appellate defense counsel's contention that the members of Panel #2 of the Court of Military Review could not render an impartial decision in this case essentially centers around the following quotation from their *Reese* opinion:

"Absent the appellant's admissions, we might be troubled with the government's evidence; however, the admissions coupled with the clear, convincing, and uncontroverted testimony of the other members of appellant's squad *leave us in no doubt that the alleged victims were killed by the appellant and his co-actor Crider.*" [Emphasis supplied.]

According to defense counsel, the above-emphasized portion of this holding reflects that the members of Panel #2 had previously made a determination of the appellant's (Crider's) guilt, *from information contained in a wholly separate record of trial* and, thus, could not be expected to impartially and fairly review the record in this case. Defense counsel also aver that the *Reese* opinion reflects a court apparently confused as to the two cases as indicated by the statement in *Reese* that "A punitive discharge was not adjudged." In reality Reese had been awarded a punitive discharge but Crider had not.[3]

The Government contends that since the members of Panel #2 were not disqualified by law and the circumstances surrounding the case from reviewing appellant's petition, they properly denied the defense motion.

There is no provision in the Uniform Code of Military Justice or in the Manual for Courts-Martial which expressly provides for disqualification of the members of the Court of Military Review for bias or prejudice or for untoward appearance.[4] However, as this Court stated in United States v Hurt, 9 USCMA 735, 753, 27 CMR 3 (1958):

". . . [It] has been correctly observed that 'inherent in the member's function is a requirement of impartiality.' Feld, Manual of Courts-Martial Practice and Appeal, § 101 (1957). Consequently, any relationship of which a board member[5] is a part which casts doubt upon his impartiality is ground for disqualification. Three statutes define the occasions for the disqualification of a judge in the Federal courts. 28 USC §§ 47, 144, and 455. See also United States v Schuller, 5 USCMA 101, 106, 17 CMR 101 [1954]. Since there are no specific statutes for the military, we look to the civil statutes for guidance. United States v Knudson, 4 USCMA 587, 590, 16 CMR 161 [1954]."

Cf. United States v Howe, 17 USCMA 165, 37 CMR 429 (1967).

Section 47, Title 28, United States Code, provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him," and section 144, Title 28, United States Code, provides for the filing of an affidavit alleging that the judge before whom the matter is pending has a "personal bias or prejudice" for or against a party to the proceedings. Section 455, Title 28, United States Code, is similar to Article 66(h), Uniform Code of Military Justice, 10

---

[3] The erroneous reference to Reese's sentence was subsequently corrected.

[4] Article 66(h), Uniform Code of Military Justice, 10 USC § 866, simply states:
"No member of a Court of Military Review shall be eligible to review the record of any trial if such member served as investigating officer in the case or served as a member of the court-martial before which such trial was conducted, or served as military judge, trial or defense counsel, or reviewing officer of such trial."

[5] Prior to enactment of the Military Justice Act of 1968, Public Law 90-632, 90th Congress, 2d Session, 82 Stat 1335, Courts of Military Review were designated as boards of review.

USC § 866, in that it provides for the disqualification of a judge who has a substantial interest in the case, was of counsel, or had been a material witness, from sitting on the trial, appeal, or other proceedings therein.

Both appellant defense and Government counsel contend that the provisions of section 144, supra, are applicable to this case.[6] With reference to that section of the United States Code, we said in United States v Howe, supra, at page 182:

"Construing section 144, it has been held that if the affidavit complies with the statutory standards, 'the judge has no alternative but to recuse himself, no matter how defamatory the charges may be and even if they are known to the Court to be false.' Conversely, 'if the statutory requirements are not satisfied, it is the duty of the judge to refuse to disqualify himself. . . . Thus, the mere filing of an affidavit of prejudice does not automatically disqualify a judge, . . . but the judge must pass upon the legal sufficiency of the facts well-pleaded.' United States v Hanrahan, 248 F Supp 471, 475 (DC DC) (1965).

"Thereafter, the test to be applied, accepting the affidavit at face value, is 'whether these facts would fairly convince a sane and reasonable mind that the judge does, in fact, harbor the personal bias or prejudice contemplated by the statute.' *Id.*, at page 475. In *Hanrahan*, that court defined prejudice with these words:

'In addition to establishing that a prejudice or bias harbored by a judge is of such a nature that it has, or may have, closed his mind to justice, the factual allegations must also show that this bias is *personal*, as opposed to *judicial*,

in nature. See, e.g., Gallarelli v United States, 260 F2d 259 (1st Cir 1958), cert. denied, 359 US 938, 79 S Ct 654, 3 L Ed 2d 638 (1959); United States v Gilboy, supra 162 F Supp at 394.' "

In United States v Grinnell Corp. 384 US 563, 583, 16 L Ed 2d 778, 793, 86 S Ct 1698 (1966), the following is noted:

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. Berger v United States, 255 US 22, 31, 65 L Ed 481, 484, 41 S Ct 230 [1921]."

See also United States v Beneke, 317 F Supp 1326 (D Minn) (1970).

In Lyons v United States, 325 F2d 370, 376 (CA 9th Cir) (1963), the court held:

". . . The section [28 USC § 144] is directed to personal bias, which means an attitude of extrajudicial origin. A mere showing of prior judicial exposure to the present parties or questions will not invoke the section. Cf. Barnes v United States, 241 F2d 252 (9th Cir 1956). Denis v Perfect Parts Inc., 142 F Supp 263 (DC Mass 1956)."

Judges are not disqualified from presiding over trials of co-conspirators tried separately. See United States v DiLorenzo, 429 F2d 216 (CA 2d Cir) (1970); cf. United States v Simon, 393 F2d 90 (CA 2d Cir) (1968). "Rulings and findings made by a judge in the course of a judicial proceeding are not in themselves sufficient reasons to believe that the judge has a personal bias or prejudice for or against a party. [Citations omitted]." United

---

[6] We are not unaware that section 144 has been held not to apply to courts of appeals. See Millslagle v Olson, 128 F2d 1015 (CA 8th Cir) (1942), and cases cited at page 1016. However, since Courts of Military Review have the authority to make findings of fact (Article 66(c), Uniform Code of Military Justice, 10 USC § 866), a power not enjoyed by most other appellate bodies, we deem the section applicable to the situation before us.

States v Amick, 439 F2d 351, 369 (CA 7th Cir) (1971).

What then of the case at bar? It cannot be denied that the judges of Panel #2 obtained their knowledge of the involvement of this appellant with Reese by virtue of their judicial activities and not through some extrajudicial personal exposure to the parties or the alleged criminal activities. Moreover, the judges are ■ not precluded from reviewing and acting upon the record in Crider's case, simply because they had previously exercised their judgment with regard to the similar offenses in the *Reese* case.

In the matter before us there are circumstances which set it apart from the situations prevailing in ■ the above-cited decisions; the first of which is the express finding of fact in the *Reese* opinion that the judges of Panel #2, *after reviewing the record in that case,* were convinced beyond a reasonable doubt "that the alleged victims were killed by the appellant [Reese] and his co-actor Crider." Based on the evidence in Reese's case, the factual determination that Crider too was guilty of murder was unnecessary to that appeal since Reese was not charged with having conspired with or acted in conjunction with Crider in committing the alleged homicides.

The fact that a court member has formed or expressed a positive and definite opinion as to the ■ guilt or innocence of an accused, is listed in the Manual, supra, among the grounds of challenges for cause; however, it is also provided that:

". . . [T]his shall *not necessarily* apply to *a military judge* who has formed or expressed such an opinion solely in his role as military judge sitting alone in a previous trial of the same or a closely related case." [Paragraph 62*f*(10), Manual, supra.] [Emphasis supplied.]

The inclusion of the limiting words *not necessarily,* in the above-quoted

portion of the Manual, is of particular importance, for this same paragraph of the Manual continues by listing as an additional basis for challenge:

"(13) Any other facts indicating that he should not sit as a member or military judge in the interest of having the trial and subsequent proceedings free from substantial doubt ·as- to legality, fairness, and impartiality."

At the time the *Reese* opinion was issued, the judges of Panel #2 had had before them the record of Crider's trial and had taken preliminary action thereon, as noted above. Apparently some confusion existed regarding the contents of the two records as evidenced by the initial incorrect statement that Reese had not been sentenced to a punitive discharge—in reality he had, but Crider had not.

Although neither Reese nor Crider testified on the merits at Reese's trial, the Panel found the evidence against Reese sufficient to sustain the findings *only when coupled with admissions of guilt which Reese made to other members of the squad.* It expressed no such difficulty with regard to a finding of Crider's guilt. Whether this holding was based solely on the evidence of record in Reese's trial or upon a subconscious admixture of the two is not known to us. In any event, Crider had a separate trial and his conviction must stand or fall on the record at that trial. Evidence from outside the record cannot be used against him.

One further item bears mention. In their opinion *in this case,* the judges of Panel #2 found from ■ the evidence that "the appellant [Crider] and Corporal Reese *conspired together* to murder four unidentified Vietnamese captives and did in fact murder them aided and abetted by Private First Class Snow." (Emphasis supplied.) Crider, like Reese, was charged with four specifications alleging murder. There was no allegation of conspiracy, nor did the specifications indicate that Crider's actions were taken in conjunction with Reese or with anyone

198

else. Conspiracy is a technical term having particular legal connotations and such a finding was totally unnecessary to this case.

As noted above, there is in this case more than "[a] mere showing of prior judicial exposure to the ▌ present parties or questions." Lyons v United States, supra, at page 376.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for action not inconsistent with this opinion.

Chief Judge DARDEN and Judge QUINN concur.