STUCKY, Judge
(dissenting):
The majority finds prejudicial error in the military judge’s private conversation with the staff judge advocate (SJA) about four already-completed cases and sets aside the findings and sentence pursuant to the multifactor analysis of Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Because I would find no error or, alternatively, find any assumed error not prejudicial under Liljeberg, I respectfully dissent.[1]
The conversation between the military judge and the convening authority’s SJA neither concerned Appellant’s case nor gave any indication of a lack of impartiality by the military judge. The military judge admitted talking “with the staff judge advocate and probably his deputy[,] not about [Appellant’s] *233 case other than that it was coming ... but about the other cases.” In particular, he told the SJA that
With respect to Cadriel, it was that I thought they sold the case too low given his culpability, his admissions in the Court, given the severity of his conduct, and the repercussions of his conduct on the junior Marines that were involved in the section, the security of this installation.
... [Fallowing my adjourning the Court, the defense counsel and the accused were high-fiving in the back of the courtroom and I felt that very inappropriate, unprofessional, and displayed a lack of remorse I thought on behalf of the accused in that particular case, and that was the Cadriel case.
I think I also mentioned following the other ... three cases ..., that I felt given the level of culpability of Cadriel versus the younger Marines who were perhaps more guided or motivated by misguided loyalty to the other two staff NCO’s that they worked for, I questioned the appropriateness of their being at a special court-martial.
The military judge also assured trial defense counsel that he could decide Appellant’s ease fairly, based on the facts presented at Appellant’s court-martial alone.
These statements fall into two categories, neither of which has the effect or gives the appearance of granting an undue advantage to one party in Appellant’s court-martial. United States v. Quintanilla, 56 M.J. 37, 79 (C.A.A.F.2001). First, the military judge’s critique of trial defense counsel’s inappropriate conduct can hardly be considered error, let alone illustrative of prejudice. Indeed, a military judge has a duty under the Rules of Professional Conduct to advise an SJA of the unprofessional conduct of junior attorneys. See Dep’t of the Navy, Judge Advocate General Instr. 5803.1C, Professional Conduct of Attorneys Practicing Under the Cognizance and Supervision of the Judge Advocate General, Enclosure (1): Rules of Professional Conduct Rule 8.3 (Nov. 9, 2004). Second, to suggest that the military judge’s comments about Staff Sergeant (SSgt) Cadriel’s relatively low sentence evidenced a bias toward a harsh sentence in Appellant’s case ignores civilian defense counsel’s concession that no actual bias existed in this case and assumes a perverse willingness on the part of the military judge to use Appellant’s court-martial to avenge a perceived failing in SSgt Cadriel’s case.
I am aware of no case law supporting the proposition that a private conversation such as the one in this case constitutes grounds for recusal. In re Boston’s Children First, 244 F.3d 164 (1st Cir.2001), and United States v. Cooley, 1 F.3d 985 (10th Cir.1993), cited by Appellant, are inapposite. Both cases involved judges who commented on pending cases through the national media. Children First, 244 F.3d at 166 (letter to the editor of the Boston Herald)-, Cooley, 1 F.3d at 990 (television interviews, including one with Barbara Walters). The military judge in this case spoke to the convening authority’s SJA in private and restricted his comments to matters no longer before him. Before today, such actions were not, to my knowledge, even considered inappropriate, let alone grounds for recusal.[2]
Even assuming arguendo that the military judge abused his discretion by not recusing himself, I would decline to reverse for want of prejudice. While the majority correctly notes that Liljeberg requires us to assess (1) the risk of injustice to the parties in the particular case, (2) the risk that denial of relief will produce injustice in other eases, and (3) the risk of undermining the public’s confidence in the judiciary, I do not find the majority’s analysis persuasive. Liljeberg, 486 U.S. at 864,108 S.Ct. 2194.
The risk of injustice to Appellant is minimal. Appellant, after all, pled guilty, and providently so, and the military judge handed *234 down a sentence with confinement of less than half the limitation in Appellant’s pretrial agreement (PTA). The majority concedes that the disparity between the confinement cap in Appellant’s case and those in the companion cases may have resulted, in part, from the fact that Appellant was the last to enter a PTA. Together with its failure to provide any evidence that the military judge’s conversations with the SJA influenced the convening authority’s decision to agree to the terms of Appellant’s PTA, these facts make the majority’s conclusion that Appellant faced a significant risk of injustice highly dubious.
Furthermore, not reversing this ease will not produce injustice in other cases. This Court clearly stated in United States v. Butcher, 56 M.J. 87 (C.A.A.F.2001), that “[i]t is not necessary to reverse the results of the present trial in order to ensure that military judges exercise the appropriate degree of discretion in the future.” Id. at 93. This prong essentially asks us to consider whether a lack of reversal would encourage similar conduct in the future. The facts of this ease are so distinct and innocuous — private conversations about already-completed trials— that I very much doubt that they could encourage any pattern of undesirable behavior.
Finally, the public’s confidence in the military justice system will likely not be undermined by the military judge’s conduct in this case. Given the guilty plea and the lenient sentence, no reasonable person could view the entire facts of this case and see bias and, as such, no reasonable person could see this case as a taint on the image of the military judiciary.
Therefore, since I would find no error, and any assumed error does not warrant relief under the applicable standard, I respectfully dissent.

. Trial defense counsel requested recusal based on the military judge's "extensive exposure to the related cases and the nature of that exposure.” As the majority correctly notes, however, presiding over companion cases does not, without more, constitute grounds for recusal. United States v. Lewis, 6 M.J. 43, 45 (C.M.A.1978).

. I do not question that it might have been better practice for the military judge to have limited his comments to the arguably improper behavior of counsel, and kept his comments regarding sen-fencing in other cases to himself. However, the question before us is whether recusal was required, and I cannot find it was on these facts.